IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOAQUIN LUNA-REYES, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 1:14cv235 |
| v. | ) ) ) | |
| RFI CONSTRUCTION, LLC, RUPERT BURROWS, and WILLIAM WARRICK, | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action by Plaintiff Joaquin Luna-Reyes under the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. §§ 201 et seq., and the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. §§ 95-25.1 et seq. The case was previously before the court on the motion of Defendants RFI Construction, LLC, ("RFI Construction") and Rupert Burrows (collectively the "RFI Defendants") to dismiss the first amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14.) The court treated the motion as one for a more definite statement, and granted it. Luna-Reyes v. RFI Const., LLC, 57 F. Supp. 3d 495 (M.D.N.C. 2014). In response, Luna-Reyes filed a second amended complaint, and the case returns on RFI Defendants' motion to dismiss. (Doc. 29.) For the reasons set forth below, the court finds that the current

complaint states plausible claims, and thus RFI Defendants' motion will be denied.

I. BACKGROUND

The facts, viewed in the light most favorable to Luna-Reyes as the non-moving party, are as follows:

Defendant RFI Construction is a North Carolina limited liability company. (Doc. 28 ¶ 7.) RFI Construction is certified for lead renovation, repair, and painting and specializes "in concrete, masonry, structural steel, roofing, store fronts, carpentry and other jobs required in commercial construction." (Id. ¶ 23.) Defendant Burrows is its owner and CEO and handles its day-to-day business, including approving employees' pay. (Id. ¶ 42.) RFI Defendants subcontracted with Defendant William Warrick "to perform subcontracted work for those two Defendants for projects on which RFI was working." (Id. ¶¶ 24–25, 44.) His responsibilities generally included the provision of "the manpower to get the job done." (Id. ¶¶ 24, 26.)

At some time before October 2013, Warrick contacted Luna-Reyes to work for "all Defendants" and "made the offer" of employment to Luna-Reyes. (Id. ¶¶ 27, 44.) Warrick allegedly did this "in conjunction with" RFI Defendants so that RFI Defendants could fulfill their contract with another contractor. (Id. ¶ 26.) For approximately the entire month of October 2013, Luna-Reyes worked as an hourly-paid (non-salaried) carpenter at a

2

construction site in Durham. (Id. ¶¶ 5, 21–22.) His pay rate was set "when he was hired by War[r]ick." (Id. ¶ 30.) He could not hire someone else to perform his job or serve as his replacement. (Id. ¶ 31.) His job neither required a high degree of skill nor extended to any specific project or time. (Id. ¶¶ 32, 36.) Rather, when hired, Luna-Reyes expected to work for an indefinite period of time. (Id. ¶ 36.)

According to Luna-Reyes, the tasks of compensation and record-keeping fell largely on the shoulders of Warrick. He determined Luna-Reyes' and others' compensation and when they would be paid. (Id. ¶ 27.) Warrick, however, "was required to confer with" RFI Defendants regarding Luna-Reyes' compensation. (Id. ¶ 28.) When workers hired by Warrick, including Luna-Reyes, raised "questions or concerns about compensation practices and unpaid wages," they were "referred to" Burrows. (Id. ¶ 42.) On at least one occasion, Warrick requested additional funds from RFI Defendants, specifically Burrows, to pay Luna-Reyes and others. (Id. ¶¶ 28, 35.) Warrick's other responsibilities included recording Luna-Reyes' and others' hours, maintaining their payroll records, and paying them each Friday. (Id. ¶¶ 28, 41.) Burrows, through Warrick, had access to those records as well. (Id. ¶¶ 35, 43)

Luna-Reyes alleges that he was paid the same hourly rate for all hours he worked, even when they exceeded forty per week. (Id.

3

¶ 37.) He further alleges that he was not paid at all for at least one week. (Id.) He finally alleges that other hourly-paid laborers and installers of "all Defendants" faced the same issues with their pay. (Id. ¶¶ 38–40.)

Beyond allegations regarding compensation and record-keeping, Luna-Reyes further claims that each of the Defendants split control over his work. Warrick, RFI Construction, and Burrows "controlled all aspects" of his work, namely "the manner in which he performed the work, the time he was required to be at work, and the type of work he performed." (Id. ¶ 29.) "All Defendants told Plaintiff what to do, when to do it, and how he was supposed to do it." (Id.) They also "instructed" Luna-Reyes on how to do his job and provided him with "specialized equipment needed to perform his work." (Id. ¶¶ 32–33.) Burrows allegedly had the power to move Luna-Reyes and "putative plaintiffs" from one RFI project to another.[1] (Id. ¶ 42.) Finally, "all Defendants" could terminate his employment. (Id. ¶ 34.)

Luna-Reyes filed his original complaint on March 20, 2014, naming only RFI Construction as Defendant and asserting two causes of action. (Doc. 1.) RFI Construction answered on April 22, 2014. (Doc. 9.) Luna-Reyes then filed an amended complaint on May 16,

---

[1] The amended complaint's reference to "putative plaintiffs," taken in the light most favorable to Luna-Reyes, may describe individuals who worked for RFI Defendants but not necessarily for Warrick. No party has suggested such an inference would have any effect on the pending motion, so the court does not consider it now.

4

2014, adding Burrows and Warrick as Defendants. (Doc. 13.) Warrick has yet to be served. On June 02, 2014, RFI Defendants moved to dismiss Luna-Reyes' claims for lack of subject-matter jurisdiction and for failure to state a claim. (Doc. 14.) Following briefing from the parties, this court denied in part and granted in part RFI Defendants' motion to dismiss, permitting Luna-Reyes to amend his complaint. (Doc. 27.)

After Luna-Reyes amended his complaint a second time, RFI Defendants renewed their motion to dismiss for failure to state a claim. (Doc. 29.) Luna-Reyes responded (Doc. 33), but RFI Defendants filed no reply. The motion is now ripe for consideration.

**II. ANALYSIS**

    **A. Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

5

(citing Twombly, 550 U.S. at 556).  Conclusory pleadings are "not entitled to the assumption of truth," id. at 679, and mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" id. at 678 (quoting Twombly, 550 U.S. at 555).  A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted).

### B.  Dismissal for Failure to State a Claim

RFI Defendants move to dismiss the second amended complaint for failure to state a claim under Rule 12(b)(6).  They argue that the complaint fails to state sufficient factual allegations of an employment relationship with them.  (Doc. 30.)  Luna-Reyes maintains that he has alleged sufficient facts to state a claim under both the FLSA and NCWHA.  (Doc. 33.)

#### 1.  FLSA Claim

The FLSA provides minimum and overtime pay scales for individuals who qualify as employees. 29 U.S.C. §§ 206(a)(1), 207(a)(1).  It also imposes financial liability on employers who violate those provisions.  29 U.S.C. §§ 216(b).  However, it "provides little guidance as to what constitutes an employer-employee relationship." Benshoff v. City of Va. Beach, 180 F.3d 136, 140 (4th Cir. 1999).

6

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); see also N.C. Gen. Stat. § 95-25.2(5) (defining "employer" similarly). Employers can include both companies and their officers. See Brock v. Hamad, 867 F.2d 804, 808 n.6 (4th Cir. 1989) (finding a manager liable for FLSA violations as an "employer" because "he hired and directed the employees who worked for the enterprise"); Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 416 (D. Md. 2013) ("It is well settled that an individual may qualify as an employer and face liability under the FLSA."). An "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); see also N.C. Gen. Stat. § 95-25.2(4) (defining "employee" similarly). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g); see also N.C. Gen. Stat. § 95-25.2(3) (defining "employ" similarly). Because the FLSA is both "remedial and humanitarian in purpose," it "should be broadly interpreted and applied to effectuate its goals." Benshoff, 180 F.3d at 140 (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)) (internal quotation marks omitted). The FLSA is "comprehensive enough to require its application to many persons and working relationships, which prior to [it], were not deemed to fall within an employer-employee category." Rutherford Food Corp.

7

v. McComb, 331 U.S. 722, 729 (1947) (quoting Walling v. Portland Terminal Co., 330 U.S. 148, 151 (1947)).

RFI Defendants offer four grounds requiring dismissal of Luna-Reyes' FLSA claim: (1) "Plaintiff failed to distinguish among the three Defendants"; (2) "Plaintiff has . . . failed to explain the basis of coverage under the FLSA"; (3) "Plaintiff appears to misconstrue the definition of an employer"; and (4) "the facts that Plaintiff does allege render his claims implausible." (Doc. 30 at 6–12.) These arguments essentially boil down to a contention that Luna-Reyes fails to allege facts plausibly stating an employer-employee relationship with RFI Defendants. Luna-Reyes' second amended complaint, however, plausibly alleges that RFI defendants were his employers under the FLSA.

In Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298 (4th Cir. 2006), the Fourth Circuit explained the process for properly analyzing allegations of an employee-employer relationship. First, the allegations "must be reviewed to identify the putative employer or employers." Id. at 305. Then, after identifying the relevant employer(s), a court should assess "the 'economic realities' of the relationship between the worker and putative employer." Id. at 304 (quoting Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 570 (10th Cir. 1994)).

Luna-Reyes alleges that RFI Defendants and Warrick are joint

8

employers under the FLSA.[2] (See Doc. 28 at ¶¶ 17, 21.) "Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA." Schultz, 466 F.3d at 305. Pursuant to 29 C.F.R. § 791.2(a),

> [I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [FLSA].

According to Department of Labor regulations, a joint employment relationship should be considered "[w]here the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek." 29 C.F.R. § 791.2(b). Examples where such a relationship exists include

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is

---

[2] Luna-Reyes also alleges that "all Defendants have been enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r)," but they have not all "collectively comprise[d] a single enterprise for FLSA coverage purposes." (Doc. 28 ¶ 18.) The parameters of this allegation are unclear but need not be examined given the conclusions below.

9

>     controlled by, or is under common control with the other employer.

Id. (footnotes omitted). "The joint employment inquiry must 'take[] into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer.'" Schultz, 466 F.3d at 306 (quoting Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003)).

In Schultz, the Fourth Circuit considered whether a Saudi prince and a security firm were joint employers of security agents. 466 F.3d at 305–06. Both the Saudi prince and the security firm were involved in the hiring of the agents; played a role in handling work schedules, discipline, compensation, and termination; and "shared responsibility for supplying the agents with equipment." Id. at 306. According to the Fourth Circuit, those facts "fit[] squarely within the third example of joint employment in [29 C.F.R. § 791.2(b)]." Id.

A court in the District of Maryland reached a similar conclusion when faced with an arrangement that was "essentially subcontractors hired by a contractor." Deras v. Verizon Maryland, Inc., No. CIV.A. DKC 09-0791, 2010 WL 3038812, at *7 (D. Md. July 30, 2010). There, a telecommunications company — Verizon — hired two utilities companies to install fiber optic cables. Id. at *5. One of the utilities companies then approached the plaintiffs and

10

offered them employment at specific pay rates. Id. That utilities company, and specifically one of its officers, "made the hiring decisions," "monitored and directed" plaintiffs' work, "issued (or withheld) [plaintiffs'] pay checks," and "addressed [plaintiffs'] complaints regarding the amounts and rates of pay they claimed were due." Id. at *1, *5. The court found that, notwithstanding the subcontractor relationship between Verizon and the utilities company, a joint employment relationship nevertheless existed between them. Id. at *6. The court reasoned that, although the utilities company directly employed the plaintiffs, plaintiffs' work "simultaneously benefit[ed]" Verizon, see 29 C.F.R. § 791.2(b); plaintiffs were hired by the utilities company "for the exclusive purpose of laying Verizon's fiber optic cable"; and Verizon "monitored, and occasionally directed" the plaintiffs and "at least exerted indirect control over the time and manner in which their work was done." Id. at *6–7. For those reasons, the court found that Verizon and the utilities company "were not completely disassociated with respect to [p]laintiffs' employment and could be deemed to share control of [p]laintiffs . . . by reason of the fact that Verizon controlled [the utilities company]." Id. (quoting 29 C.F.R. § 791.2(b)) (internal quotation marks and brackets omitted).

As in Schultz and Deras, the second amended complaint sufficiently alleges the existence of a joint employment

11

relationship between RFI Defendants and Warrick, falling within the third example provided by the Department of Labor. Luna-Reyes' work is alleged to have "simultaneously benefited" both Warrick and RFI Defendants. 29 C.F.R. § 791.2(b). Moreover, RFI Defendants and Warrick are allegedly "not completely disassociated with respect to the employment of" Luna-Reyes and may be deemed to share control of Luna-Reyes. 29 C.F.R. § 791.2(b)(3).

Here, Luna-Reyes alleges that Warrick hired Luna-Reyes "in conjunction with" RFI Defendants and for a specific project. (Doc. 28 ¶ 26.) Along with Warrick, RFI Defendants allegedly supplied equipment so that Luna-Reyes could perform his work. (Id. ¶ 33.) Although Warrick largely handled compensation and record-keeping, Luna-Reyes also alleges that RFI Defendants played a role in handling his work schedule, discipline, compensation, and termination. For one, RFI Defendants could terminate him. (Id. ¶ 34.) Burrows could also move individuals to other projects and handled "questions or concerns about compensation" raised by Luna-Reyes and others. (Id. ¶ 42.) Warrick once went to Burrows requesting funds to pay Luna-Reyes and others. (Id. ¶¶ 28, 35.) Finally, RFI Defendants allegedly "controlled" Luna-Reyes' work with Warrick and instructed Luna-Reyes and others "on how to do their jobs." (Id. ¶ 32; see also id. ¶ 29 ("[A]ll Defendants told Plaintiff what to do, when to do it, and how he was supposed to do it.").) These allegations sufficiently allege that RFI Defendants

12

and Warrick were joint employers of Luna-Reyes. See Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 330–31 (D.N.J. 2005) (finding allegations that company exercised power to hire, fire, and control wages sufficient to find joint employment relationship), aff'd sub nom. Zavala v. Wal Mart Stores Inc., 691 F.3d 527 (3d Cir. 2012); Mendoza v. Essential Quality Const., Inc., 691 F. Supp. 2d 680, 685 (E.D. La. 2010) ("Although . . . a general contractor/subcontractor relationship does not establish joint employment, neither does the fact that such relationship exists preclude the possibility that the employees of the subcontractor are also the employees of the general contractor."); cf. Hugee v. SJC Grp., Inc., No. 13 CIV. 0423 GBD, 2013 WL 4399226, at *3–8 (S.D.N.Y. Aug. 14, 2013) (holding that company was not joint employer with another because, along with other facts, it had no power to hire or fire employees and exercised little control over plaintiffs); Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 773–76 (D. Md. 2008) (holding that defendant was not a joint employer because plaintiffs' work was not dependent on defendant, plaintiffs were not supervised by defendant, and defendant had no ability to hire or fire plaintiffs).

Having determined that RFI Defendants and Warrick are sufficiently alleged to be joint employers, the court must focus on the "economic reality" of their relationship with Luna-Reyes to determine whether he is their employee or an independent contractor

under the FLSA. Schultz, 466 F.3d at 307. The factors often considered for making this inquiry are

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

Id. at 304-05. In the context of a joint employment relationship, this inquiry is "on the one employment provided jointly by [the employers]." Id. at 307.

Luna-Reyes' second amended complaint sufficiently alleges that he was an employee of RFI Defendants and Warrick rather than an independent contractor. RFI Defendants and Warrick allegedly "controlled all aspects" of Luna-Reyes' work, specifically "the manner in which he performed the work, the time he was required to be at work, and the type of work he performed." (Doc. 28 ¶ 29.) Luna-Reyes' position required little skill and provided him no opportunity for profit or loss based on that skill. (Id. ¶¶ 30, 32.) RFI Defendants and Warrick provided all his necessary equipment. (Id. ¶ 33.) Luna-Reyes alleges that his employment was without an end date. (Id. ¶ 36.) While there is little detail of exactly what he was doing as an hourly-wage carpenter, it appears that Luna-Reyes was part of "the manpower [necessary] to get the job done" provided by Warrick for RFI Defendants. (Id.

14

¶ 24.) It is also alleged that Luna-Reyes was not hired for any particular job and thus would be expected to continue to work on RFI Construction jobs after the current job ended. (Id. ¶ 36.) These are sufficient allegations to render plausible a claim that Luna-Reyes is an employee of RFI Defendants and Warrick for purposes of the FLSA. See Schultz, 466 F.3d at 307–09 (holding that employees plaintiffs who lacked investment in equipment and had little control over the manner in which their work was performed were employees, not independent contractors); cf. Herman v. Mid-Atl. Installation Servs., Inc., 164 F. Supp. 2d 667, 671–77 (D. Md. 2000) (concluding that plaintiffs were independent contractors where, among other facts, they provided their own equipment and provided skilled labor), aff'd sub nom. Chao v. Mid-Atl. Installation Servs., Inc., 16 F. App'x 104 (4th Cir. 2001).

### 2. NCWHA Claim

RFI Defendants also seek to dismiss Luna-Reyes' NCWHA claim, brought only under N.C. Gen. Stat. § 95-25.6. As with Luna-Reyes' FLSA claim, they first argue that the second amended complaint fails to allege an employer-employee relationship. As explained above, however, that argument is unconvincing, and RFI Defendants have not provided any persuasive reason why Luna-Reyes' NCWHA claim should be treated differently from his FLSA claim. See Laborers' Int'l Union v. Case Farms, Inc., 488 S.E.2d 632, 634 (N.C. App. Ct. 1997) ("The North Carolina Wage and Hour Act is modeled after

15

the Fair Labor Standards Act (FLSA)."); Jones v. Am. Airlines, Inc., No. 5:08-CV-236-BR, 2008 WL 9411160, at *3 (E.D.N.C. Oct. 16, 2008) (dismissing a plaintiff's claim under the NCWHA "for the reasons given with regard to plaintiffs' FLSA claim," namely that the plaintiff failed to sufficiently allege an employer-employee relationship).

RFI Defendants also appear to argue that the FLSA preempts Luna-Reyes' NCWHA claim. North Carolina law itself provides for FLSA preemption of certain NCWHA claims. Under N.C. Gen. Stat. § 95-25.14, the FLSA preempts North Carolina's minimum-wage (§ 95-25.3), overtime (§ 95-25.4), and record-keeping (§ 95-25.15(b)) provisions. Luna-Reyes, though, brings his NCWHA claim under § 95-25.6 (a "pay day" claim). The FLSA does not preempt such claims. Charlot v. Ecolab, Inc., No. 12-CV-4543 KAM VMS, 2015 WL 1439916, at *20 (E.D.N.Y. Mar. 27, 2015) ("Unlike North Carolina overtime claims, payday claims are not preempted by the FLSA pursuant to N.C. Gen. Stat. Ann. § 95–25.14(a)(1), which specifically limits such preemption to minimum wage, overtime and recordkeeping claims."); see also Hanson-Kelly v. Weight Watchers Int'l, Inc., No. 1:10CV65, 2011 WL 2689352, at *4–5 (M.D.N.C. July 11, 2011) (holding that plaintiff's § 95-25.6 claim is not preempted by the FLSA); Martinez-Hernandez v. Butterball, LLC, 578 F. Supp. 2d 816, 820 (E.D.N.C. 2008) (same). RFI Defendants' motion to dismiss is therefore denied as to Luna-Reyes' NCWHA claim.

16

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that the motion of Defendants RFI Construction and Rupert Burrows to dismiss the second amended complaint pursuant to Rule 12(b)(6) (Doc. 29) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

June 1, 2015

17

Case 1:14-cv-00235-TDS-JEP   Document 36   Filed 06/01/15   Page 17 of 17